UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EFREM STEPHON WILSON,

                Plaintiff,                Case No. 1:14-cv-291

v.                                         Honorable Janet T. Neff

R. SCHAFER et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Overton, Palmer, Marshall and Grahn. The Court will serve the complaint against Defendant Schafer.

**Discussion**

I.      <u>Factual allegations</u>

Plaintiff Efrem Stephon Wilson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI).  Plaintiff sues the following RMI  personnel: Corrections Officer R. Schafer; Sergeant A. Overton; Warden Carmen Palmer; Classification Director N. Marshall and Nurse Practitioner Corey Grahn.

Plaintiff alleges that on April 22, 2013, while he was on the yard, Defendant Schafer ordered him to give a shakedown.  Plaintiff complied.  While conducting the shakedown, Plaintiff alleges that Defendant Schafer "was rubbing his penis up on Plaintiff's buttocks."  (Compl., docket #1, Page ID#6.)  Plaintiff told Defendant Schafer to back off and requested to see a Sergeant.  Defendant Schafer denied Plaintiff's request. Plaintiff told Defendant Schafer that he was going to write to the warden about Defendant Schafer's conduct.  Defendant Schafer replied that he did nothing but follow policy.  Plaintiff returned to his cell and wrote a grievance regarding Defendant Schafer's conduct.

That same day, Plaintiff wrote a letter to Defendant Palmer about Defendant Schafer's sexual assault and asked Defendant Palmer to conduct a full investigation into the matter.  Plaintiff alleges that "Defendant Palmer deny to do something about the complaint."  (*Id.*)

On January 25, 2014, while Plaintiff was in the prison chow hall, Defendant Schafer walked past Plaintiff and told Plaintiff that "he has a nice butt" and that Defendant Schafer was "going to feel it one more time soon."  (*Id.*)

On May 3, 2013, Defendant Overton called Plaintiff to the prison control center to talk to him about the grievance he filed against Defendant Schafer.  Plaintiff alleges that Defendant Overton "trying to cover up the matter for [sic] Defendant Schafer, Defendant Overton consparcy [sic] to cover up the matter."  (*Id.*)

In addition to Defendant Schafer's alleged conduct, Plaintiff complains about his inability to obtain a job assignment or transfer to another prison.  Plaintiff alleges that by January 2, 2014, he had written "about 8-letters to Defendant [Marshall] asking for a job assignment" because Plaintiff does not have anyone to send him money.  (*Id.* at Page ID#7.)  Plaintiff alleges that Defendant Marshall denied him a job assignment because Plaintiff is black and a prisoner.  Plaintiff told Defendant Marshall that he has a medical disability and he cannot read or write well.  Defendant Marshall told Plaintiff that he had to have a G.E.D. or high school diploma to obtain a job assignment.  Plaintiff told Defendant Marshall that he had a "document" that said he does not have to go to school in prison because of his medical disability problem and that MDOC Policy Directive 05.01.100 supports his allegation that he does not have to complete a G.E.D. in order to obtain a job assignment.  (*Id.*)

On January 30, 2014, Plaintiff wrote a prison health care services "kite" to see Defendant Grahn to ask for a transfer to another prison.  Plaintiff told Defendant Grahn that he cannot walk up the steps to the law library, but he needs time in the law library.  Plaintiff told Defendant Grahn that he has a medical detail that prevents him from having to walk up more than 10 steps and that prison policy provides that if a prison cannot meet a prisoner's medical needs, the prisoner can be transferred to a facility where the prisoner's medical needs can be met. Plaintiff told

Defendant Grahn that if Plaintiff could not be transferred to a prison with a ground floor law library it would deny him his right to access the court.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

-4-

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Palmer

Plaintiff alleges that Defendant Palmer did not "do something about the complaint" he sent regarding Defendant Schafer's conduct. (Compl., docket #1, Page ID#6.) It is unclear if Plaintiff's "complaint" was a separate letter to Defendant Palmer, or if the complaint was Plaintiff's prison grievance. Regardless, however, the analysis is the same.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Palmer engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against Defendant Palmer.

### B.      Defendant Overton

Plaintiff alleges that on May 3, 2013, Defendant Overton called him to the prison control center to talk about the grievance Plaintiff had filed against Defendant Schafer. Additionally, Plaintiff alleges that Defendant Overton was "trying to cover up the matter for [sic] Defendant Schafer, Defendant Overton consparcy [sic] to cover up the matter." (Compl., docket #1, Page ID# 6.)

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

Plaintiff's allegations are insufficient to state a claim.  Plaintiff fails to make any factual allegations against Defendant Overton that could support a claim that Defendant Overton

violated any of Plaintiff's constitutionally protected rights.  Consequently, Plaintiff fails to state a claim against Defendant Overton.

### C.    Defendant Marshall

Plaintiff alleges that Defendant Marshall has ignored his repeated written requests for a job assignment.  Additionally, Plaintiff alleges that Defendant Marshall denied him a job assignment because he is black, because he is a prisoner and because Plaintiff's medical disabilities prevent him from obtaining a G.E.D.  Finally, Plaintiff alleges that Defendant Marshall's failure to give Plaintiff a job because he has not completed a G.E.D. violates MDOC Policy Directive 05.01.100.

To the extent that Plaintiff alleges that Defendant Marshall violated MDOC rules, he fails to state a constitutional claim.  A failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

To the extent that Plaintiff complains that Defendant Marshall's actions violated his right to procedural due process, he also fails to state a claim.  "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due

-7-

process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

   The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

   The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty or property interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).

-8-

Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, because he has no liberty or property interest in his prison employment, Plaintiff fails to state a due process claim against Defendant Marshall.

To the extent Plaintiff complains that Defendant Marshall's actions violated his right to equal protection, he also fails to state a claim.  Plaintiff claims that Defendant Marshall is refusing to give him a job assignment because he is black, because he has a medical disability and because he is a prisoner.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."

-9-

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).  To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265-66.

Plaintiff alleges that Defendant Marshall refuses to give him a job because he is black.  While race is recognized as a suspect class, Plaintiff's allegations on this point are wholly conclusory.  He merely states that he is being treated differently because he is black.  Plaintiff provides no factual allegations to support his contention, and he identifies no similarly situated prisoner who was treated differently.  Neither does Plaintiff allege any facts to suggest that Defendant Marshall is purposefully discriminating against him.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff alleges that Defendant Marshall also is refusing to give him a job assignment because he is a prisoner and because he has a medical disability.  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Prisoners are not a suspect class.  *See Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  Moreover, disabled persons are not members of a protected class simply by virtue of their disability.  *See City of Cleburne*, 473 U.S. at 445-46 (holding that the mentally retarded do not constitute a suspect class and stating in dicta that the mentally ill are not a suspect class).  In addition, as discussed above, prisoners have neither a liberty nor property right

to a prison job assignment, let alone a fundamental right to a prison job assignment under the Constitution.  Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Again, Plaintiff's allegations  are wholly conclusory.  He merely states that he is being treated differently because he is a prisoner and because he has a medical disability.  Plaintiff provides no factual allegations to support his contention, nor does he allege any facts to suggest that Defendant Marshall is intentionally and arbitrarily discriminating against him.  *Id.*  As previously discussed, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Based on the foregoing, Plaintiff fails to state a claim against Defendant Marshall.

### D.    **Defendant Grahn**

Plaintiff alleges that he wrote a kite to see Defendant Grahn to ask for a transfer to another prison with a law library on the first floor as a result of Plaintiff's documented inability to

climb more then 10 stairs. Plaintiff alleges that Defendant Grahn's failure to transfer him to a prison with a ground floor law library violates his right to access the courts.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In addition, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

-12-

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.

The Court notes that Plaintiff identifies Defendant Grahn as a nurse practitioner.  It is entirely unclear that Defendant Grahn has any authority to have Plaintiff transferred and Plaintiff fails to set forth any allegations to suggest that Defendant Grahn has such authority.

Assuming arguendo that Defendant Grahn has transferring authority, Plaintiff fails to allege sufficient facts to support his claim that Defendant Grahn denied him access to the courts.  Plaintiff fails to allege that he has suffered an actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349.  Moreover, a prisoner has no independent constitutional right to confinement in a particular prison, and has no right to be transferred to a prison facility of his choice.  *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983).

Based on the foregoing, Plaintiff fails to state a claim against Defendant Grahn.

-13-

### E.  **Defendant Schafer**

Plaintiff alleges a claim against Defendant Schafer for violation of his Eighth Amendment rights.  Specifically, Plaintiff alleges that on April 22, 2013, Defendant Schafer rubbed his penis on Plaintiff's buttocks during a shakedown on the prison yard.  Additionally, Plaintiff alleges that on January 25, 2014, Defendant Schafer told Plaintiff that "he has a nice butt" and that Defendant Schafer was "going to feel it one more time soon."  (Compl., docket #1, Page ID#6.)

At this juncture in the proceedings, Plaintiff allegations warrant service on Defendant Schafer.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Overton, Palmer, Marshall, and Grahn will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant Shafer.

An Order consistent with this Opinion will be entered.


Dated:   April 22, 2014                         /s/ Janet T. Neff                              
                                    Janet T. Neff
                                    United States District Judge