UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EFREM WILSON,

                Plaintiff,                                   Hon. Janet T. Neff

v.                                              Case No. 1:14 CV 291

DANIEL SCHAFER, et al.,

                Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on <u>Defendant's Motion for Summary Judgment</u>.  (Dkt. #13).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this action **dismissed**.


## <u>BACKGROUND</u>

Plaintiff alleges that on April 22, 2013, Corrections Officer Daniel Shafer conducted a search of Plaintiff during which Shafer "was rubbing his penis up on Plaintiff['s] buttock."  Plaintiff further alleges that on January 25, 2014, Shafer stated to Plaintiff that "he has a nice butt" and that he was "going to feel it one more time soon."  Plaintiff alleges that Defendant Shafer's conduct constituted a sexual assault in violation of his Eighth Amendment rights.  Plaintiff also asserted various claims against other MDOC employees, all of which have since been dismissed.  Defendant Shafer now moves for summary judgment on the ground that Plaintiff has failed to exhaust his claims against him.  Plaintiff has failed to respond to Defendant's motion.

## LEGAL STANDARD

A.    Summary Judgment

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B.   Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to

petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and

independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a).  *See Spruill*, 372 F.3d at 232.

## ANALYSIS

In support of his motion, Defendant has submitted evidence that Plaintiff has pursued a total of four grievances through all three steps of the prison grievance process.  (Dkt. #13, Exhibit 2).  As discussed below, however, none of these grievances serve to exhaust Plaintiff's claims against Defendant Schafer.

I.          Grievance RMI-14-02-0500-28c

Where an inmate files a civil action in federal court before completing the available administrative processes, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies.  *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir., Dec. 17, 1998) (inmate's "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a)"); *Hopkins v. Ohio Department of Corrections*, 84 Fed. Appx. 526, 527 (6th Cir., Dec. 4, 2003) ("[w]hen a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate" because "[e]xhaustion may not be completed after a federal complaint has been filed").  As discussed below, because Plaintiff initiated the present action

-6-

before allowing the prison grievance process to be completed, this grievance cannot serve to exhaust his claims against Defendant Schafer.

According to MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S (effective July 9, 2007). MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.

In circumstances in which a prisoner initiates legal action prior to receiving a response to his Step III grievance, but after the expiration of the aforementioned 120 day period, the Court has determined that such constitutes proper exhaustion of available administrative remedies. As the Court has observed, to conclude otherwise would permit MDOC officials to easily obtain the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process. The present circumstance, however, is distinguishable.

Plaintiff initiated this grievance on February 26, 2014. (Dkt. #13, Exhibit 2). While Plaintiff has appealed the matter to Step III of the grievance process, a decision on his Step III appeal had not yet been provided as of May 27, 2014. (Dkt. #13, Exhibit 2). Thus, the administrative grievance process was not properly completed until the sooner of the following: (1) Plaintiff receiving

a response to his Step III grievance, or (2) the expiration, on June 26, 2014, of the 120-day grievance response period. When Plaintiff initiated the present lawsuit on March 18, 2014, however, he had neither received a response to his Step III grievance nor had the 120-day period expired. Simply stated, when Plaintiff initiated the present action, the MDOC grievance process had not been completed with respect to this grievance.

Moreover, the fact that prison officials may not provide a response to Plaintiff's Step III grievance until after the expiration of the 120-day period is irrelevant. As the Sixth Circuit has made clear, whether the grievance process is properly completed after the initiation of legal action is irrelevant. Instead, the relevant question is whether the grievance process has been properly completed at the moment legal action is initiated. Accordingly, this particular grievance cannot serve to exhaust any of Plaintiff's remaining claims.

II.          Grievance RMI-14-03-0639-12d1

Plaintiff initiated this grievance on March 12, 2014. (Dkt. #13, Exhibit 2). While Plaintiff has appealed the matter to Step III of the grievance process, a decision on his Step III appeal had not yet been provided as of May 27, 2014. (Dkt. #13, Exhibit 2). Thus, the administrative grievance process was not properly completed until the sooner of the following: (1) Plaintiff receiving a response to his Step III grievance, or (2) the expiration, on July 10, 2014, of the 120-day grievance response period. When Plaintiff initiated the present lawsuit on March 18, 2014, however, he had neither received a response to his Step III grievance nor had the 120-day period expired. Thus, when Plaintiff initiated the present action, the MDOC grievance process had not been completed with respect

to this grievance.  Accordingly, this particular grievance cannot serve to exhaust any of Plaintiff's remaining claims.


III.        Grievance RMI-14-03-0639-12d1

        Plaintiff initiated this grievance on February 11, 2014.  (Dkt. #13, Exhibit 2).  While Plaintiff has appealed the matter to Step III of the grievance process, a decision on his Step III appeal had not yet been provided as of May 27, 2014.  (Dkt. #13, Exhibit 2).  Thus, the administrative grievance process was not properly completed until the sooner of the following: (1) Plaintiff receiving a response to his Step III grievance, or (2) the expiration, on June 11, 2014, of the 120-day grievance response period.  When Plaintiff initiated the present lawsuit on March 18, 2014, however, he had neither received a response to his Step III grievance nor had the 120-day period expired.  Thus, when Plaintiff initiated the present action, the MDOC grievance process had not been completed with respect to this grievance.  Accordingly, this particular grievance cannot serve to exhaust any of Plaintiff's remaining claims.


IV.        Grievance RMI-13-10-2250-28b

        Plaintiff initiated this grievance on October 16, 2013, alleging that he was not receiving appropriate medication to treat his back pain.  (Dkt. #13, Exhibit 2).  This grievance does not concern Plaintiff's allegations against Defendant Schafer asserted in the present action.  Accordingly, this grievance cannot serve to exhaust any of Plaintiff's remaining claims.

        Plaintiff has failed to respond to Defendant's motion or otherwise present evidence to counter Defendant's motion or the evidence submitted in support thereof.  Accordingly, the undersigned

finds that Defendant has satisfied his burden to demonstrate that Plaintiff has failed to properly exhaust his remaining claims against Defendant Schafer.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (dkt. #13), be **granted** and this action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: October 20, 2014                    /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge